## 5440. CENTRAL OF GEORGIA RAILWAY CO. *v.* CURTIS.

WADE, J.  1. The effect of the Carmack amendment to the Hepburn act was to give to the Federal jurisdiction control over interstate commerce. Atchison, Topeka & Santa Fé Railway Co. *v.* Robinson, 233 U. S. 173 (34 Sup. Ct. 556) ; Kansas City Southern R. Co. *v.* Carl, 227 U. S. 639 (33 Sup. Ct. 391, 57 L. ed. 683) ; Missouri, K. & T. R. Co. *v.* Harriman,

227 U. S. 657 (33 Sup. Ct. 39, 57 L. ed. 690); Chicago, R. I. & P. R. Co. v. Cramer, 232 U. S. 490 (34 Sup. Ct. 383); *Atlantic Coast Line Railroad Co.* v. *Thomasville Live Stock Co.*, 13 *Ga. App.* 102 (78 S. E. 1019). These decisions determine the proposition that the shipper, as well as the carrier, is bound to take notice of the filed tariff rates, and that so long as they remain in effect they are conclusive as to the rights of the parties. Great Northern Railway Co. v. O'Connor, 232 U. S. 508 (34 Sup. Ct. 380).

2. "The offense of giving or receiving rebates, in violation of the Elkins act Feb. 19, 1903, c. 708, 32 Stat. 847 (U. S. Comp. St. Supp. 1911, p. 1309), is complete when the carrier, to whom the shipper has paid the full legal rate, pays over to the shipper, upon a claim presented by him, the amount of the rebate stipulated in the agreement under which the shipment was made, or when a part of the legal rate already paid has been refunded." 3 Moore on Carriers (2d ed.), 1940. "A contract or an agreement, executed or executory, for a rate different from the published rate is void itself." *Georgia Railroad* v. *Creety*, 5 *Ga. App.* 424, 426 (63 S. E. 528). See section 2 of the act to regulate commerce, as amended (Act Feb. 4, 1887, c. 104, 24 Stat. 379; U. S. Comp. St. 1901, c. 3155).

3. "A mistake by a carrier in responding to an inquiry by a shipper, either as to the rate or as to the route, will relieve neither the one nor the other from the obligation of fulfilling the law's requirements. In either event the carrier must collect and the shipper must pay the rate as published for the route over which the shipments actually move. A schedule of rates published in the manner provided by law speaks with equal authority to the shipper and the carrier, and both are equally chargeable with notice of the rate and of the route over which the rate is applicable." Barnes on Interstate Transportation, §§ 194, 195, and cases cited.

4. Where goods are tendered with a bill of lading showing the route, but no rate, and the goods are moved as routed, and the consignee pays the legal rate over that route, and thereafter files a claim or demand against the carrier, alleging that a lesser rate was the full lawful rate over another and different route, and that the carrier had contracted with him through its agent to meet this competitive rate, and a refund is made by the consignee, such payment, made either by mistake of the carrier or through the illegal act of an agent of the carrier, may be recovered in a proceeding brought for that purpose. *Georgia Railroad* v. *Creety*, supra; *Central Railway Co.* v. *Willingham*, 8 *Ga. App.* 817 (70 S. E. 199).

5. Where a contract for a rate less than the lawful rate filed with the interstate-commerce commission is made between the agent of a railroad company and a shipper over the railroad and its connections, represented by the agent, and the full lawful rate is collected, and a claim for the difference between the lawful and the contract rate is made by the shipper and allowed through error by the railroad company, and suit is filed by the railroad company to recover the amount so improperly refunded, the shipper can not offset the plaintiff's demand by a claim for

damages on account of the breach of the illegal contract for the lesser rate. The contract being void, such damages can not be offset or collected.

6. The court erred in overruling the certiorari.          *Judgment reversed.*
          DECIDED JULY 7, 1914.

Certiorari; from Muscogee superior court—Judge Gilbert. December 17, 1913.

*Battle & Hollis,* for plaintiff in error. *J. L. Willis,* contra.