PHYLLIS R. PERKINS *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    January 6, 1919. — March 1, 1919.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Carrier*, Of goods: liability for baggage. *Negligence*, Railroad, Gross. *Words*, "Ordinary handling."

In an action against a railroad corporation for damage done to a harp of the plaintiff checked as baggage on a train of the defendant on which the plaintiff was a passenger, it could have been found that the harp when checked was in good condition, that the case containing the harp had painted on each side in very large conspicuous letters the words "Fragile, handle with care," that on the top was written in large black pencil letters "This side up" and on the bottom was written in like letters "This side down," and that when delivered at the place of destination the harp was in a "badly damaged" condition. The defendant's tariff schedule filed with the proper State and federal authorities, of which the plaintiff was charged with notice, contained a provision that "cases

or other receptacles marked . . . 'fragile' or in any other manner indicating that the contents are of a fragile nature and likely to be damaged by ordinary handling will not be accepted for transportation, except at owner's risk." The plaintiff at the time of checking her harp signed an agreement fixing its valuation for the purposes of the transportation as not exceeding $25 and agreeing that the railroad corporation should "not be liable beyond said valuation on account of any claim for loss or damage occurring to said property while being so transported." The plaintiff testified that after she had paid the charges and the case containing the harp had been checked she "saw the baggage man in the rear of the baggage room take my harp on a small truck and throw it, deliberately throw it off like he would a trunk." *Held,* that the provision of the tariff by which the plaintiff was bound did not, and could not, exonerate the defendant from liability for damage to the harp through negligence of the defendant's employees, and that the plaintiff was entitled to go to the jury on the question of the defendant's negligence, which could have been found to be gross negligence.

In the case above described it also was *held* that the plaintiff was bound by her valuation of $25 and her agreement that the defendant's liability should be limited to this amount.

In the same case it also was *said* that in the phrase "likely to be damaged by ordinary handling," contained in the provision above quoted from the defendant's tariff schedule, the words "ordinary handling" meant nothing more than the ordinary wear and tear necessarily incidental to the transportation of such articles where reasonable care is used by the carrier.

CONTRACT OR TORT for damage done on February 1, 1915, to a harp belonging to the plaintiff which she had checked as baggage on a train of the defendant on which the plaintiff was a passenger. Writ dated July 19, 1915.

The first count of the declaration alleged negligence of the defendant as a common carrier of baggage. The second count alleged gross negligence of the defendant as such carrier.

In the Superior Court the case was tried before *Fessenden,* J. The evidence is described in the opinion. The agreement, there referred to, which was signed by the plaintiff at the time of checking her harp, was as follows:

"Form B. 277

The New York, New Haven & Hartford Railroad Company.
Baggage Department.
Boston,      South Station          Feb. 1, 1915.

The undersigned having delivered to the New York, New Haven & Hartford Railroad Company the following items of property for transportation from Boston to Providence, in a baggage car, namely:

10729  Harp.

The undersigned hereby agrees that the valuation of each of said items of property for the purposes of said transportation shall not exceed Twenty-five dollars; and that the rate charged for such transportation is based upon said agreed valuation; and that said Company shall not be liable beyond said valuation on account of any claim for loss or damage occurring to said property while being so transported.

Phyllis R. Hammond    Owner.

Witness:
    E. A. Ruvoire

The release, when properly signed and witnessed, to be returned at once to the General Baggage Agent, New Haven, Conn."

At the close of the evidence the defendant filed the following requests for rulings:

"1. On all the law and the evidence the plaintiff is not entitled to recover.

"2. On all the law and the evidence the plaintiff is not entitled to recover under the first count.

"3. On all the law and the evidence the plaintiff is not entitled to recover under the second count.

"4. There is no evidence of gross negligence on the part of the defendant."

"8. If the defendant under its tariffs offered to check a harp in its baggage service, it had a right to prescribe the condition under which it would check the harp."

"10. The plaintiff was bound by the provisions of the defendant's tariffs duly filed with the interstate commerce commission.

"11. The plaintiff cannot in this proceeding contend that the defendant's tariffs then in effect were unreasonable, or were not binding upon her.

"12. There is not sufficient evidence that the plaintiff complied with all of the provisions of the defendant's tariff."

"15. Under its tariff the defendant is not liable for negligence with reference to the harp.

"16. In no event is the defendant liable for more than $25."

The judge granted the defendant's request No. 2, and refused the defendant's other requests as immaterial, if gross negligence

were found by the jury, and submitted the case to the jury solely upon the question of gross negligence on the part of the defendant. In his charge the judge instructed the jury that the degree of negligence used by the defendant to make it answerable to the plaintiff for gross negligence must amount to an absolute, wanton disregard of the plaintiff's rights of property and an almost wilful destruction of property, and that, if they found such gross negligence on the part of the defendant, they should assess damages for the plaintiff in such sum as would recompense the plaintiff for her loss.

The jury returned a verdict for the plaintiff in the sum of $200, and with the consent and at the request of the parties the judge reported the case for determination by the court upon the following conditions: If the rulings made and the refusals to rule as the defendant requested were correct, the verdict was to stand; if the defendant's tariffs were not applicable, and the plaintiff was entitled to recover, the verdict was to stand; if there was error in the rulings made, the refusals to rule as the defendant requested, or any of them, so far as material, then judgment was to be entered for the plaintiff on the first count in the sum of $25, provided that, if on all the evidence the plaintiff was not entitled to recover at all, final judgment was to be entered for the defendant.

*A. W. Blackman,* for the defendant.

*V. C. Lawrence,* for the plaintiff, filed no brief and did not care to be heard.

BRALEY, J.   The defendant concedes, and the record conclusively shows, that as an interstate carrier it accepted and undertook to transport the plaintiff's harp in the baggage car of the train on which she was a passenger, under a contract in accordance with its local and joint passenger tariff of excess and miscellaneous baggage service charges.   It is settled that, this tariff or schedule having been filed with the proper State and federal authorities, and duly posted in the company's stations and offices, it could not be waived or modified by the defendant, while the plaintiff, also being charged with notice, was bound by its terms.   *Metz Co.* v. *Boston & Maine Railroad,* 227 Mass. 307.   While the jury could find that when shipped in good order the case containing the harp had painted on each side in very large conspicuous letters the words

"Fragile, handle with care," and on the top written in large black pencil "This side up," and on the bottom, "This side down," yet when delivered at the place of destination the harp was in a "badly damaged" condition. The tariff however provided that " . . . cases or other receptacles marked . . . 'fragile' or in any other manner indicating that the contents are of a fragile nature and likely to be damaged by ordinary handling will not be accepted for transportation, except at owner's risk." The words "ordinary handling" mean nothing more than the ordinary wear and tear necessarily incidental to the transportation of such articles where reasonable care is used by the carrier.

The plaintiff testified and the jury could find, that after the requisite charges had been paid and the case containing the harp had been checked, and the check delivered, she "saw the baggage man in the rear of the baggage room take my harp on a small truck and throw it, deliberately throw it off like he would a trunk." It would follow from this evidence as the jury could say, that the injury to the harp was caused by the way the case had been handled by the defendant's employee, and whether what he did was the ordinary way in which receptacles marked fragile were to be handled was also a question of fact under suitable instructions. The defendant's first request, that the action could not be maintained, the fourth request, that there was no evidence of gross negligence, the twelfth request, that there was no sufficient evidence that the plaintiff had complied with the provisions of the tariff, and the fifteenth request, that under the tariff the defendant is not liable for negligence, were denied rightly.

But the refusal to give the eighth request, that the defendant had a right to prescribe the condition under which it would check the harp, the tenth request, that the plaintiff was bound by the tariff, the giving of the second request, that the action could not be maintained under the first count which charged ordinary negligence, and the ruling, that all of the requests not given became immaterial if gross negligence was found by the jury as alleged in the second count, were erroneous. The defendant could limit its common law liability by just and reasonable conditions, and the plaintiff, as we have said, was bound by the tariff or terms of the contract, which did not purport, and could not lawfully have done so, to exonerate it from all liability if the harp

was damaged through the negligence of its employees. *Garvan, Inc.* v. *New York Central & Hudson River Railroad,* 210 Mass. 275, 278. *Metz Co.* v. *Boston & Maine Railroad,* 227 Mass. 307.

The plaintiff nevertheless was entitled to go to the jury on the issue of the defendant's negligence, the degree of which they could find on the evidence to be gross. *Spooner* v. *Old Colony Street Railway,* 190 Mass. 132, 135, and cases cited. *Altman* v. *Aronson,* 231 Mass. 588. *Garvan, Inc.* v. *New York Central & Hudson River Railroad,* 210 Mass. 275, 278. See *Yancey* v. *Boston Elevated Railway,* 205 Mass. 162, 171, 172; *Freeman* v. *United Fruit Co.* 223 Mass. 300, 302.

The instructions were sufficiently favorable to the defendant on the question of liability, although wrong on the measure of damages, which, although the jury assessed a much larger sum, was limited under the affirmation of valuation or "release" the plaintiff had executed waiving her right to any greater amount, to $25, as pointed out in the defendant's sixteenth request which the judge also refused to give for the reasons previously stated. But in accordance with the terms of the report "if there was error in the rulings made, the refusals to rule as the defendant requested, or any of them, so far as material, then judgment is to be entered for the plaintiff on the first count in the sum of $25."

*So ordered.*